IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Wiley Y. Daniel**

Civil Action No. 09-cv-01340-WYD-CBS

JACK P. KATZ;
STEVEN A. STENDER; and
INFINITY CLARK STREET OPERATING,
on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

ERNEST A. GERARDI, JR.,
RUTH ANN M. GILLIS;
NED S. HOLMES;
ROBERT P. KOGOD;
JAMES H. POLK III;
JOHN C. SCHWEITZER;
R. SCOT SELLERS;
ROBERT H. SMITH;
STEPHEN R. DEMERITT;
CHARLES MUELLER, JR.;
CAROLINE BROWER;
MARK SCHUMACHER;
ALFRED G. NEELY;
ARCHSTONE-SMITH OPERATING TRUST;
ARCHSTONE-SMITH TRUST; and
TISHMAN SPEYER DEVELOPMENT CORPORATION,

    Defendants.

---

# ORDER

---

THIS MATTER is before the Court on a motion to dismiss amended class action complaint filed by the Defendants on September 21, 2009 (d/e 32). The Defendants seek dismissal of all claims under Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure. Having reviewed the parties' pleadings, arguments of counsel, and the

1

applicable law, Defendants' motion is **GRANTED**.

**I.    BACKGROUND**

The Plaintiffs represent a class of persons who held A-1 Units in the Archstone Smith Real Estate Investment Trust ["Archstone REIT"].  This real estate investment trust was publicly traded, with the Archstone Smith Operating Trust ["Archstone UPREIT"] owning 89% of the common stock.  The A-1 Units had a number of unique features that made them particularly valuable, such as liquidity rights, dividend rights, and most importantly tax indemnification.  In the Spring of 2007, Archstone REIT began discussions with a partnership between Tishman-Speyer and Lehman Brothers to purchase Archstone REIT and create a private entity [the "merger"].  This merger was ultimately approved, although the holders of the A-1 Units had no voting rights and thus were unable to vote on the deal.  The merger closed on October 5, 2007.

Under the terms of the deal, the holders of the A-1 Units were given a choice: they could sell their Units at the price the holders of common shares would receive, $60.75, or they could swap their A-1 Units for new Series O Preferred Units in the new private company owned by the Tishman-Lehman Partnership.  Some of the Plaintiffs opted to sell their shares [the "cash-out subclass"], and a smaller number opted to receive Series O Preferred Units [the "Series O subclass"].  Neither option was particularly appealing to holders of the A-1 Units, as the cash-out price did not reflect the significant extra features of the A-1 Units and the Series O Preferred Units did not have the same advantages.  The new entity was named the Tishman Speyer Archstone-Smith Multifamily Series I Trust ["Tishman Speyer Trust"].   Soon after the merger, the real estate market suffered a significant decline and the Tishman Speyer Trust began to experience trouble, primarily from its level of indebtedness.  As a result, the value of the Tishman Speyer Trust and the

Series O Units has declined significantly.

The Plaintiffs allege that the Prospectus and other documents associated with the merger contained false and misleading statements or omissions that have caused them economic damages. They contend that numerous aspects of the merger, including undisclosed risks of the new entity, were not made apparent to the holders of the A-1 Units. The Plaintiffs now bring suit on behalf of themselves and all those who held A-1 Units in Archstone between May 27, 2007 and October 5, 2007, and whose units were exchanged for cash or were converted to Series O Preferred Units in the private company owned by the Tishman-Lehman Partnership that was the result of a merger that took place on October 5, 2007. In their complaint, the Plaintiffs assert violations of Sections 11, 12(a)(2) and 15 of the Securities Act of 1933, 15 U.S.C. §§ 77(k), 77l(a)(2) and 77o, Sections 10(b) and 20(a) of the Securities and Exchange Act of 1934, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. The named Defendants are the Archstone REIT, Archstone UPREIT, the individual directors/trustees of those entities, and various other parties associated with the merger, including Tishman Speyer Trust.

The Plaintiffs in this suit bring with them a long procedural history. Although represented by the same counsel, the Plaintiffs originally filed separate complaints in different courts.

Plaintiff Katz filed a complaint in the state court of Cook County, Illinois on May 28, 2008 alleging violations of securities laws in connection with the merger. The Defendants removed the case to the U.S. District Court for the Northern District of Illinois. The Plaintiffs then moved for a remand to the state court, which was granted. The Defendants appealed this decision to the Seventh Circuit, which reversed and remanded to the district court for further proceedings on removal. That opinion was written by Chief Judge Frank H.

3

Easterbrook, and mainly concerned whether a more recent law concerning jurisdiction of civil claims abrogated the specific jurisdictional requirements of securities laws. Following the remand to the Federal District Court, the parties agreed to transfer the case to this Court. It is this litigation that is presently under consideration.

Plaintiffs Stender and Infinity have a different history. They were not originally parties to the present litigation, but filed their own complaint in the U.S. District Court for the District of Colorado in November 2007 alleging breach of contract and breach of fiduciary duty arising out of the merger. The case was assigned to my former colleague, Judge Edward W. Nottingham, with certain pretrial proceedings referred to Magistrate Judge Michael J. Watanabe. Plaintiffs Stender and Infinity purported to represent all holders of A-1 Units who either cashed out their shares or whose shares were converted in the merger. In February of 2008, Plaintiffs Stender and Infinity, through their counsel, told Magistrate Judge Watanabe that they were considering amending their complaint to add claims under securities laws. They never did so. Magistrate Judge Watanabe ordered a stay on February 27, 2008, pending Judge Nottingham's ruling on the Defendant's Motion to Stay or Dismiss in Favor of Arbitration and to Dismiss for Failure to State a Claim. This order was ultimately granted on September 30, 2008. The claims for breach of fiduciary duty were dismissed and arbitration was ordered on the breach of contract claim.

Meanwhile, Plaintiffs Stender and Infinity joined the Katz litigation and are now parties to this case. The original Stender action has since been transferred to Judge Robert E. Blackburn, following Judge Nottingham's resignation. On September 28, 2009, Judge Blackburn granted Plaintiffs leave to file an amended complaint, but stayed the case pending arbitration. Plaintiffs Stender and Infinity filed a motion to reconsider that portion of the ruling, which was recently denied. That action has been administratively closed and

the parties have been compelled to arbitrate the breach of contract claims arising out of the merger.

All three Plaintiffs are now parties to the present litigation. Defendants filed a Motion to Dismiss Amended Class Action Complaint on September 21, 2009. The Plaintiffs filed a response on October 16, 2009. The Defendants filed their reply on November 2, 2009. The Plaintiffs then filed a Motion for Leave to File Sur-Reply on November 13, 2009 accompanied by their proposed Sur-Reply. I heard oral arguments regarding the Defendant's motion on March 22, 2010.

**II.   ANALYSIS**

    **A.   STANDARD OF REVIEW**

The Federal Rules of Civil Procedure provide that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted). "A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pled facts which allow "the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Id*. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 1950.

Further, a plaintiff alleging securities fraud and related causes of action must meet a heightened pleading standard in order to survive a defendant's motion to dismiss. *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003). The Private Securities Litigation Reform Act (PSLRA) requires a plaintiff who alleges securities fraud based on a misrepresentation or omission of material fact to "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading...." 15 U.S.C. § 78u-4(b)(1). The Private Securities Litigation Reform Act (PSLRA) was enacted "[a]s a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007). The PSLRA also requires that in any securities fraud action "the complaint shall, with respect to each act or omission alleged to violate [the Securities Exchange Act], state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2).

### B. WHETHER PLAINTIFFS STENDER AND INFINITY ARE BARRED FOR CLAIM SPLITTING

In their motion, Defendants offer a myriad of reasons why the complaint should be dismissed, some procedural and some substantive. Among the procedural grounds for dismissal, the Defendants argue that the Plaintiffs Stender and Infinity are not able to take part in this suit because they are engaged in a separate suit in which these same claims could have been asserted. Defendant's allege this constitutes impermissible "claim splitting," which would preclude Stender and Infinity from participating in this litigation. I agree.

Claim splitting is an aspect of res judicata that prevents parties from filing two substantially identical complaints in order to evade procedural restrictions. *Hartsel Springs*

*Ranch of Colo. v. Bluegreen Corp.,* 296 F.3d 982, 990 (10th Cir. 2002). Dismissal for claim splitting allows the district court to manage its own docket in an efficient manner. *Id.* at 985. Four elements[1] determine whether duplicative litigation constitutes claim splitting: "(1) finality of the first judgment; (2) identity of subject matter; (3) identity of claims for relief; and (4) identity or privity between parties to the actions." *Id.* at 986-87; *Anderson v. Nat'l City Bank*, No. 07-cv-01556, 2007 WL 3342576 (D. Colo. Nov. 8, 2007). The Plaintiffs have essentially conceded that all but the first element, the finality of the first judgment, are present in this situation. They argue that because no judgment has been rendered in the first suit, which is now before Judge Blackburn, that case has not reached a level of finality that participation in this suit is precluded. The Plaintiffs are incorrect.

The Tenth Circuit has addressed this issue, saying that "[i]t is clear that a motion to dismiss based on improper claim-splitting need not–indeed, often cannot–wait until the first suit reaches final judgment." *Hartsel Springs,* 296 F.3d at 987 n.1; *see also Anderson*, 2007 WL 3342576 at *1 ([a]s to the first element... a motion to dismiss the second-filed action need not wait until the first suit reaches final judgment"). The very purpose of the claim splitting doctrine, to eliminate inefficient and unfairly duplicative litigation, would be completely undermined if only suits that had reached final judgment precluded the further filing of complaints. Furthermore, Judge Blackburn recently denied the motion to reconsider dismissal and stay of the case and granted a motion to compel arbitration. *Stender v. Cardwell, et. al*, No. 07-cv-02503 (D. Colo. May 20, 2010) (Order granting motion to compel arbitration), ECF No. 114. Thus, after submission of the briefs and oral argument, the Stender action currently before Judge Blackburn reached an even greater

---

[1]Both the Plaintiffs and the Defendants describe the four prongs as factors, but they are more accurately characterized as elements, all of which seem to be necessary to dismiss a suit for claim splitting. *See Hartsel Springs,* 296 F.3d at 987 & n.2.

level of finality. In such a situation, I see no reason why all four elements of claim splitting are not present with regard to Stender and Infinity.

The Plaintiffs offered a justification for their participation in this suit at oral argument that is relevant but somewhat tangential to the four *Hartsel Springs* elements. In February of 2008, Plaintiffs Stender and Infinity mentioned to Magistrate Judge Watanabe that they may be amending their complaint to add claims under securities laws. However, on February 27, 2008, Magistrate Judge Watanabe granted a stay pending Judge Nottingham's decision on Defendant's Motion to Stay or Dismiss in Favor of Arbitration and to Dismiss for Failure to State a Claim. Judge Nottingham ruled on that motion in September of 2008. Thus, the Plaintiffs say they were prevented from adding securities claims to that suit because the case was stayed right after they expressed an interest in amending their complaint, and they were forced to participate in the Katz litigation filed in May of 2008 in order to be able to pursue their interests. If this were true, it might change the balance of equities in the claim splitting analysis. However, contrary to the Plaintiffs arguments, they had ample time to add securities claims to their complaint. The motion for stay granted on February 27, 2008 (ECF No. 28) was a stay on *discovery* and other pre-trial proceedings. The syllabus of that Order expressly provides that "discovery is STAYED pending ruling by Chief Judge Nottingham on Defendants' Motion to Stay or to Dismiss[.]" *Stender,* No. 07-cv-02503 (D. Colo. May 20, 2010) (Order granting motion to stay discovery), ECF No. 50. The motion to stay the trial of the action (ECF No. 29) remained pending before Judge Nottingham.

Moreover, Plaintiffs own actions belie their arguments here. Following the entry of a stay by Magistrate Judge Watanabe, the Plaintiffs filed four motions in the case, indicating they clearly did not believe their ability to engage in motion practice had been

stayed. Thus, it appears that the stay did not impact the Plaintiffs' ability to file a motion for leave to file amended complaint, and they could have filed such a motion between February 27, 2008 and September 30, 2008. They did not attempt to do so.

The Plaintiffs Stender and Infinity failed to file claims regarding the same transaction or occurrence in litigation presently before another judge in this court, even though they could have and should have done so. They now seek to participate in the present litigation. I decline to allow them to engage in this kind of claim splitting, and thus Stender and Infinity are dismissed as Plaintiffs from this case.

### C. CLAIMS OF KATZ AND THE CASH-OUT SUBCLASS UNDER THE 1933 SECURITIES ACT

The only Plaintiff remaining is a member of the cash-out subclass, the Plaintiff Katz. The Defendants assert that Katz and the cash-out subclass lack standing to bring a claim under the 1933 Securities Act because they did not acquire or purchase shares in connection with the merger but rather sold shares. For the reasons stated below, I agree.

Only those who acquire or purchase securities have standing under the 1933 Act, not sellers of securities. *Joseph v. Wiles,* 223 F.3d 1155, 1159-61 (10th Cir. 2000). *See* 15 U.S.C. § 77k(a) ("In case any part of the registration statement, when such part became effective, contained an untrue statement of material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, any such person *acquiring* such security... may... sue")(emphasis added); 15 U.S.C. § 77l(a) ("Any person who offers or sells a security... shall be liable... to the person *purchasing* such security from him)(emphasis added). Katz and members of the cash-out subclass opted to sell their A-1 Units rather than obtain new Series O Preferred Units in the new entity created by the merger. As such, they were given money in exchange for their A-1 Units, which constitutes a sale and not a purchase.

Plaintiffs argue, however, that "sale" does not accurately characterize the transaction. Plaintiffs claim their situation fits into the fundamental change doctrine or forced sale doctrine, whereby the "requirements of the 1933 Act are satisfied where an involuntary transaction is imposed which works such a drastic change upon the nature and economic features of a security as to constitute a fundamental change in the security that results, in effect, in the acquisition of a new security by the holder..." (Pl. Resp. to Defs.' Mot. to Dismiss at 15.) The Plaintiffs claim that their original A-1 Units were exchanged for new and inferior A-1 Units as a result of the merger because the merger price did not account for all of the valuable features of the A-1 Units. Thus, the Plaintiff contends, it must have been these 'new' inferior A-1 Units that were cashed out because the sale price did not reflect the benefits of the original A-1 units.

The Plaintiff's arguments are unfounded. The "forced seller" doctrine has not been adopted by the Tenth Circuit. *Anderson v. Dixon*, No. 95-4119, 1996 WL 276183, at *2 (10th Cir. May 24, 1996). Furthermore, based on the cases the Plaintiff provided from other Circuits, the forced seller doctrine does not appear to relate to the Plaintiff's argument because it concerns the distinct requirements for standing under the 1934 Exchange Act, not the 1933 Securities Act.[2] The forced sale or fundamental change doctrine concerns whether a conversion from one kind of share to another or an involuntary relinquishment

---

[2] *Bold v. Simpson*, 802 F.2d 314, 320-21 (8th Cir. 1986) (ruling forced seller doctrine did not apply to plaintiff when discussing whether a transaction fulfilled the "in connection with a purchase or sale of any security" requirement of Rule 10b-5). *See also Jacobson v. AEG Capital Corp.,* 50 F.3d 1493, 1498 (9th Cir. 1995) (declining to apply forced seller doctrine to Rule 10b-5 claims arising out of corporate bankruptcy); *7547 Corp. v. Parker & Parsley Dev. Ptrs., L.P.,* 38 F.3d 211, 226 (5th Cir. 1994) (using fundamental change doctrine to determine whether plaintiff was a "purchaser" or "seller" for the purposes of standing under section 10(b) of the Exchange Act and rule 10b-5); *Rand v. Anaconda-Ericsson, Inc.*, 794 F.2d 843, 847 (2d Cir. 1986) (declining to apply forced seller doctrine to Section 10(b) claim arising out of corporate bankruptcy).

of shares for cash in a merger is "in connection with a purchase or sale of any security," which is required for a claim under Section 10(b) of the 1934 Exchange Act and Rule 10b-5. *Bold*, 802 F.2d at 320-21. Here, the question is not whether *any sale or purchase of a security* occurred for standing under the 1934 Exchange Act, but whether the Plaintiff Katz and the cash-out subclass *acquired or purchased a security* for standing under the 1933 Securities Act. Thus, even if the doctrine existed in the Tenth Circuit, which it does not, the Plaintiffs fail to make a cogent argument as to how it would apply to the Plaintiff's standing under the 1933 Securities Act, which requires that Plaintiff buy, not sell, securities.

The Plaintiff's argument, that the cash-out subclass in fact sold 'new' A-1 Units after acquiring them through a fundamental change, was previously raised by the Plaintiff Katz on appeal to the Seventh Circuit. There it was summarily rejected by Chief Judge Easterbrook. Judge Frank H. Easterbrook stated that "Katz sold his units for cash; he did not buy any new security. The 'new A-1 Units' are figments of a lawyer's imagination. Using legally fictitious (and factually nonexistent) 'new A-1 Units' to nullify a legislative decision that only buyers have rights under the 1933 Act would be wholly unjustified." *Katz v. Gerardi*, 552 F.3d 558, 560 (7th Cir. 2009). While these comments are not binding upon this court, I find them persuasive. Katz and the cash-out subclass he represents did not obtain any new security. He sold securities at a price that he now feels did not reflect the full value of all of the features of the A-1 Units. While he may object to the substantive terms of the merger, including the price received for the A-1 Units, nothing about the situation somehow transforms what was obviously a sale into a purchase.

Because the Plaintiff Katz did not purchase or acquire a security through the merger, neither he nor the cash-out subclass has standing to sue the Defendants for violations of the 1933 Securities Act. As such, counts one, two, and three of the amended class action

11

complaint are dismissed.

### D. CLAIMS OF KATZ AND THE CASH-OUT SUBCLASS UNDER THE 1934 EXCHANGE ACT

The remaining claims concern Plaintiff Katz's allegation that the Defendants violated Section 10(b) and 20(a) of the Securities Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5. Section 10(b) and the SEC's Rule 10b-5 promulgated thereunder prohibit fraudulent acts done in connection with securities transactions. *Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1094-95 (10th Cir. 2003). Section 10(b) makes it unlawful "[t]o use or employ, in connection with the purchase or sale of any security ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). Rule 10b-5 identifies certain actions that are prohibited by the statute. In particular, Rule 10b-5 makes it unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading...." 17 C.F.R. § 240.10b-5. In order to state a claim under Section 10(b) of the 1934 Act and Rule 10b-5, the Plaintiffs must allege: (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharmaceuticals, Inc., v. Broudo*, 544 U.S. 336, 341-42 (2005). The Complaint must allege facts that satisfy these elements.

Taking the allegations in the complaint as true, I find the Plaintiffs have failed to adequately plead a cause of action under Section 10(b) and Rule 10b-5 because they have not plead loss causation sufficiently. I confine and limit my analysis to this one element that is lacking and decline to decide the other issues, including whether Plaintiffs have suffered

an economic loss.

In order to plead a cause of action under the 1934 Exchange Act, the "plaintiff shall have the burden of proving that the act or omission of the defendant alleged to violate this chapter caused the loss for which the plaintiff seeks to recover damages." 15 U.S.C. § 78u-4(b)(4). "Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff." *In re Citigroup Auction Rate Sec. Litig.*, 2009 WL 2914370, at *8 (S.D.N.Y. Sept. 11, 2009)(quoting *Lentell v. Merrill Lynch & Co., Inc.*, 396 F.3d 161, 172 (2d Cir. 2005)).

The Plaintiffs have provided generalized conclusory statements as to causation, but the facts alleged do not substantiate their assertions. In the sole paragraph under the section titled "Defendants' Misrepresentations and Omissions Caused Plaintiff's Damages," the Complaint states:

> Defendants' materially false and misleading statements and omissions issued in connection with the transactions referred to herein caused the damages suffered by Plaintiffs and the Class. Plaintiffs and the Class were damaged by the forced conversion of the A-1 Units for $60.75 in cash or the economically inferior Series O Units. The $60.75 per unit cash-out price and the Series O Units were worth materially less than the original A-1 Units they replaced.

(Compl., ¶104.) This paragraph itself is telling. Plaintiffs claim the "forced conversion" caused the damages for which the Plaintiffs bring suit, but the forced conversion was entirely a function of the substance of the merger, not the alleged misrepresentations of the Defendants. The merger caused the negative change in value of the A-1 Units, and was the source of the economic loss. The Plaintiffs use language reflecting as much in numerous places in the Complaint. *See* (Compl., ¶73) ("The Merger thereby caused a loss of value for both A-1 Unit holders that 'elected' to receive the Tishman-Lehman

13

Partnership's cash offer and A-1 Unit holders that 'elected' to convert or otherwise had their A-1 Units converted to Series O Units"); (Compl., ¶82) ("the Merger eliminated substantive economic features and changed material provisions of the A-1 Units... Plaintiffs and members of the Class therefore sustained, and will continue to sustain, significant damages as a result"). Even on the face of the Complaint itself, the merger caused the supposed injury that the Plaintiffs claim.

Looking more specifically to the allegations of wrongdoing, they also make clear that the supposed misrepresentations and omissions could not have caused the injury to the Plaintiff Katz and the cash-out subclass. Many of the substantive allegations in the Plaintiff's complaint concern undisclosed risks associated with the new entity created in the merger.[3] (Compl., ¶¶ 86-88.) However, the cash-out subclass never obtained any interest in the Tishman Speyer Trust. They took cash when Archstone REIT and Archstone UPREIT were merged to create it. Tishman Speyer Trust's subsequent failure, possibly due to risks that were undisclosed, cannot have harmed the cash-out subclass because they had no part in that enterprise. They received their payment and after that had no connection to the new entity whatsoever, so undisclosed risks with its operation are irrelevant.

It is at least theoretically possible that misrepresentations in the Prospectus and other documents could have harmed the Series O subclass. If an artificially positive outlook was presented that caused A-1 Unit holders to convert their shares to Series O Preferred Units in the Tishman Speyer Trust that then declined in value, that would be, at least hypothetically, damages caused by misrepresentations or omissions. However, the

---

[3]The Plaintiffs make numerous other allegations of misrepresentation or omission in their 72 page Complaint, but they are irrelevant to any legal claim.

only Plaintiffs that remain are members of the cash-out subclass, and there is no way the misrepresentations have harmed them. The true harm that came to the remaining Plaintiffs was as a result of the substantive terms of the merger, whereby the A-1 Unit holders were bought out at a price that they feel did not reflect the premium features of their shares. This does not form the basis of a Section 10(b) and Rule 10b-5 claim for misrepresentation or omission of material fact.

Because the Plaintiffs have not plead a claim under Section 10(b) and Rule 10b-5, their claim against the individual defendants as "controlling persons" under Section 20(a) of the 1934 Exchange Act, 15 U.S.C. § 78t(a), also fails because there is no underlying claim on which it may be based.

Therefore, Counts IV and V are dismissed.

### III. CONCLUSION

The Plaintiffs Stender and Infinity are unable to participate in this suit because allowing them to do so would constitute claim splitting. The Plaintiff Katz and the cash-out subclass do not have standing to bring a suit under the 1933 Securities Act. The Plaintiff Katz and the cash-out subclass have failed to adequately plead that their losses were caused by the alleged misrepresentations and omissions of the Defendants, and for that reason they failed to state a claim under the 1934 Exchange Act.

It is therefore

ORDERED that Defendant's Motion to Dismiss Amended Class Action Complaint filed September 21, 2010 [ECF No. 32] is **GRANTED** and Plaintiffs; Amended Class Action Complaint is **DISMISSED**. It is

FURTHER ORDERED that Plaintiffs' Notice and Motion to Clarify Record of Oral Argument filed April 8, 2010 [ECF No. 58] is **DENIED AS MOOT**. It is

15

FURTHER ORDERED that Plaintiffs' Motion for Leave to File Sur-Reply filed November 13, 2009 [ECF. No. 49] is **GRANTED.**

Dated: August 3, 2010

BY THE COURT:

s/ Wiley Y. Daniel
WILEY Y. DANIEL,
CHIEF UNITED STATES DISTRICT JUDGE